IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RHONDA L. UNDERWOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:16-cv-00546 |
| v. ) | Senior Judge Haynes |
| ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM

Plaintiff, Rhonda L. Underwood, filed this action under 42 U.S.C. §§ 405(a) and 1383(c)(3) against the Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, seeking judicial review of the Commissioner's denial of Plaintiff's applications for disability benefits under Title II and XVI of the Social Security Act. Plaintiff filed her application on April 20, 2010, alleging disability since April 19, 2010 based upon her severe back pain, lumbar spine impairments, hypertensive cardiovascular disease, and hypertension. (Docket Entry No. 12, Administrative Record, at 213-220, 248). Plaintiff's applications were denied initially, and after reconsideration. Id. at 106-08, 110-11. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and by decision dated March 5, 2012, ALJ Roberts found Plaintiff had severe impairments, but retained the ability to perform light work. Id. at 84-99. Plaintiff requested review of the ALJ's decision by the Appeals Council that ordered a remand for a new hearing. Id. at 100-03.

After a second hearing, the ALJ found Plaintiff was not disabled and was able to perform light work. Id. at 5-34. Plaintiff requested a review by the Appeals Council that the Appeal Council denied. Id. at 1-5.

Before the Court is the Plaintiff's motion for judgment on the administrative record (Docket

Entry No. 14) contending, in sum, that the ALJ erred in evaluating the opinions of Plaintiff's treating physicians and Plaintiff's credibility. The Commissioner responded (Docket Entry No. 17) that the ALJ properly evaluated the evidence and his decision is supported by substantial evidence.

## A. Review of the Record

Plaintiff, a high school graduate, was 45 years old at the onset of her disability. (Docket Entry No. 12, Administrative Record, at 39-40). Plaintiff's past relevant work was as a packer and cashier. Id. According to Plaintiff's testimony, after back surgery in 2007, she was unable to work due to severe and sharp pain in her back. Id. at 44, 48. Plaintiff testified that she can sit and stand for 15-20 minutes when her pain bothers her and she must change positions. Id. at 44-45. Plaintiff can lift five pounds. Id. at 46. Plaintiff, who had carpal tunnel surgery in 1997 or 1998, cannot lift over 10 pounds with her right hand and was receiving injections into her right hand and wearing a brace at night to avoid hand pain. Id. at 64. Despite hip surgery in 2008, Plaintiff had left-sided hip pain. Id. at 47-49. Plaintiff has received injections and used a TENS unit without relief. Id. at 49-50. Plaintiff sleeps for a couple of hours and then is awake for two or three hours. Id. at 50. Lack of sleep causes Plaintiff daytime fatigue that has not been alleviated by any treatment. Id. at 50-51.

At home, Plaintiff tries to sweep or mop, but doing so causes back pain and requires rest. Id. at 44. Plaintiff cannot write for very long due to hand pain, and often drops items if she does not use both hands. Id. at 69. Plaintiff's medications help her symptoms, but these effects wear off if Plaintiff tries to do housework. Id. at 70. Plaintiff lies down three-fourths of the day to relieve her pain. Id.

On September 5, 2007, Plaintiff had an L4-L5 laminectomy for low back pain that radiated down her left leg. Id. at 358. On February 25, 2008, Plaintiff began treatment with Pain Management Specialist William H. Leone, M.D., of the Pain Management Group. Id. at 667. Dr. Leone also

treated Plaintiff for cervical spondylosis and, on December 9, 2009, administered left C4, C5, and C6 medial branch nerve block. Id. at 596. On February 3, 2010, Dr. Leone performed a left C4, C5, medial branch nerve rhizotomy. Id. at 591. In a follow-up procedure on March 2, 2010, Plaintiff responded that the rhizotomy helped her neck pain and mobility, but her left arm heaviness and left shoulder pain remained. Id. at 587-90. Dr. Leone refilled her medications of Lortab and Neurontin, but added Robaxin. Id. at 590, 615. On March 30, 2010, Plaintiff reported a continued "heavy" feeling in her left arm and a physical examination revealed tenderness and increased tone in the cervical paraspinal muscles. Id. at 583-86. Dr. Leone refilled Plaintiff's medications and ordered an updated MRI of her cervical spine. Id.

On April 27, 2010, the MRI revealed posterior disc protrusions at C2-C3, C3-C4, C4-C5, and C5-C6 causing mild compression of the spinal cord at C4-C5 and C5-C6. Id. at 578. Plaintiff also had a diffuse disc bulge at C6-C7 and bilateral uncovertebral osteophytes causing mild central stenosis and bilateral foraminal narrowing. Id. Dr. Leone also ordered refills of Plaintiff's medications. Id. at 582.

On May 25, 2010, Plaintiff cited increased neck pain upon turning to the left and Dr. Leone noted that past epidural injections had not helped in the long term. Id. at 574-77. Dr. Leone refilled her medications and recommended IFC treatment. Id. at 577. On June 22, 2010, Plaintiff reported to Dr. Leone that she was attending physical therapy and using her TNS unit, but standing, lifting, bending, and sitting for too long increased her pain. Id. at 571. Dr. Leone refilled her medications, recommended a functional capacity evaluation, and would consider repeating prior procedures as needed. Id. at 573.

In a June 22, 2010 letter, Malinda Johnson PAC, Dr. Leone's assistant, described Plaintiff's

history of treatment at The Paint Management Group for chronic neck and low back pain, id. at 569, that remained unchanged on July 20, 2010 and August 17, 2010. Id. at 562-68. Plaintiff's medications were refilled. Id. On September 14, 2010, Plaintiff returned to the clinic complaining of increased low back pain radiating to her right lower extremity. Id. at 558. Dr. Leone ordered an updated MRI of Plaintiff's lumbar spine. Id. at 560. On November 9, 2010, Plaintiff reported increased neck pain and her inability to afford physical therapy. Id. at 548. Plaintiff also reported symptoms of low back pain and bilateral lower extremity pain that worsen with walking. Id. Dr. Leone prescribed lumbar epidural steroid injections that Plaintiff received on November 24, 2010, December 8, 2010, and December 19, 2010. Id. at 535-50.

On February 3, 2011, Dr. Leone refilled Plaintiff's Lortab, prescribed Mobic, and recommended physical therapy. Id. at 532-34. On February 25, 2011, Plaintiff received trigger point injections to her trapezii and supraspinatus areas. Id. at 529. On March 3, 2011, Plaintiff received medication refills. Id. at 525-27. On April 28, 2011, Plaintiff returned to Dr. Leone for additional refills and physical examination that revealed tenderness in the cervical and lumbar paraspinal muscles. Id. at 518-20.

On October 13, 2011, Plaintiff experienced severe and worsening pain throughout her spine and both legs as well as difficulty falling asleep. Id. at 697. Elizabeth Bruce, PAC, examined Plaintiff on October 13, 2011 and December 8, 2011 and found cervical and lumbar spine tenderness. Id. at 693-98. Bruce prescribed Lortab, Robaxin, and Neurontin, ordered an MRI of Plaintiff's thoracic spine, and recommended additional lumbar epidural injections. Id. at 695. The December 23, 2011 MRI revealed a left paracentral disc protrusion at T7-T8 of Plaintiff's spine. Id. at 699.

On August 20, 2014, Dr. Leone performed a functional capacity evaluation. Id. at 1085-1103. Based upon the test results, Dr. Leone opined that Plaintiff was unable to perform stooping, kneeling, crouching, lifting or carrying more than ten pounds, pushing or pulling more than ten pounds, reaching with the left arm, or rotating the cervical spine left or right. Id. at 1085. Dr. Leone cited very decreased flexion and extension in Plaintiff's lumbar spine. Id.

On August 25, 2014, Dr. Leone completed a Disability Impairment Questionnaire summarizing Plaintiff's condition, citing his diagnoses of brachial neuritis, lumbosacral neuritis and spondylosis, cervical spinal stenosis and spondylosis, shoulder joint pain, thoracic spine pain, myalgia and myositis, and facet syndrome. Id. at 1110-14. Plaintiff's primary symptoms were chronic pain in her neck, left shoulder, and lumbar spine that have been present since September 3, 2007. Id. at 1111, 1114. In Dr. Leone's opinion, Plaintiff could sit for up to one hour total and stand/walk for up to one hour total in an eight hour day. Id. at 1112. Dr. Leone recommended that when sitting for 10-15 minutes, Plaintiff should get up and move around every 20 minutes before returning to a seated position. Id. Dr. Leone stated Plaintiff could lift and carry up to ten pounds occasionally and could only work for 1/3 of an eight-hour day where the job would involve reaching in all directions and manipulation. Id. at 1112-13. Plaintiff's pain, fatigue, and other symptoms would limit her attention and concentration to one-third to two-thirds of an eight-hour workday. Id. at 1113. Due to her impairments or treatment, Dr. Leone stated Plaintiff would require unscheduled breaks for 10-15 minutes every 30 minutes, and would be absent from work more than three times per month. Id. at 1113-14.

On April 10, 2007, Plaintiff began treatment with Dr. Payne, a board certified internist, for anxiety, chronic left hip and back pain, and insomnia. Id. at 449. After an April 28, 2010 emergency

5

room visit for a fall on her left hip, Dr. Payne saw Plaintiff on May 4, 2010 for left hand pain. Id. at 380, 413. Dr. Payne's examination revealed tenderness of Plaintiff's left lateral hand and referred Plaintiff for x-rays with a prescription for Ibuprofen. Id. at 413. On June 15, 2010, Plaintiff returned as her Celexa was not helping her mood. Id. at 409. Dr. Payne noted Plaintiff was receiving pain management for chronic back, leg and heel pain and prescribed Effexor for Plaintiff. Id. Plaintiff's prescription was extended on July 27, 2010 and November 4, 2010. Id. at 409, 690-91. On April 28, 2011, Plaintiff reported to Dr. Payne that due to anxiety, she cried easily. Id. at 682. Dr. Payne increased Plaintiff's Cymbalta prescription and continued her Effexor. Id. On July 25, 2011, Plaintiff complained of hand swelling and her inability in the mornings to make a fist with her right hand. Id. at 683. Physical examination revealed puffy bilateral hands and difficulty clenching the right fist. Id. at 685. Dr. Payne continued Plaintiff's Cymbalta and added Hydrochlorothiazide for Plaintiff's hand swelling. Id. at 683.

On October 13, 2013, Dr. John D. Woods examined Plaintiff and reviewed her medical records. Id. at 700-02. Dr. Woods's physical examination revealed antalgic gate, bilateral pes planus, weak right grip, decreased flexion in the right thumb, moderate right knee crepitus, moderately deceased lumbar spine flexion and extension, moderately decreased cervical spine range of motion in all directions, and low back pain with dorsiflexion of the right lower extremity. Id. at 702. Dr. Woods's diagnoses were multilevel degenerative disc disease, generalized osteoarthritis, and obesity. Id. Based on this examination and review of records, Dr. Woods opined that Plaintiff was permanently impaired from gainful employment, and has been since September 2007. Id. at 700.

In a Multiple Impairment Questionnaire dated October 15, 2013, Dr. Woods reiterated his diagnoses and clinical findings and cited Plaintiff's MRI test results as supportive of his assessment.

Id. at 703-10. Dr. Woods cited Plaintiff's primary symptoms as low back pain radiating to the left leg, right knee pain, and neck pain, and her pain that he rated as moderately severe-to-severe on a 7-9 on a 10-point scale. Id. at 704. Dr. Woods opined that Plaintiff's disc disease and arthritis and impairments to have been present since September 2007 would progress over time. Id. at 703, 709.

As to work, Dr. Woods opined that Plaintiff could sit for three hours total and stand/walk for up to one hour total in an eight-hour day. Id. at 705. For sitting, Dr. Woods stated Plaintiff should get up and move around every few minutes after sitting for at least a few minutes before returning to a seated position. Id. at 705-06. Plaintiff could lift 10 pounds occasionally and carry up to 5 pounds occasionally, but should refrain from pushing, pulling, kneeling, bending, and stooping. Id. at 706, 709. Dr. Woods described as marked Plaintiff's limitations in gross and fine manipulation with her right hand and moderate limitations in using her arms to reach due to neck pain. Id. at 706-07. In Dr. Woods's view, Plaintiff's conditions would frequently interfere with her attention and concentration and require providing Plaintiff an hourly break to rest for at least a few minutes or longer depending on the severity of her pain. Id. at 708. Dr. Woods estimated Plaintiff would miss more than three days per month from any job. Id. at 709.

Dr. Jerry Lee Surber, a consultant, examined Plaintiff and found C5 through C7 tenderness of Plaintiff's spine; a decreased cervical spine range of motion; and palpable tenderness of the left greater than right L1 through L5 paravertebral musculature. Id. at 391-93. Plaintiff could complete only 25% of a squat and had a decreased range of motion in her lumbar spine. Id. at 392. Plaintiff had a weaker appearance standing on the left leg, a slow performance on straightaway, tandem, and heel-toe walks, and evinced a limping gait towards the left. Id. Dr. Surber did not opine on Plaintiff's functional capacity. Id.

Lowell Latto, a vocational expert, testified that an individual of Plaintiff's age, education, and work history who could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday, occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and never climb ladders and scaffolds could perform Plaintiff's past work as a cashier. Id. at 73-74. In Latto's opinion, Plaintiff could perform light, unskilled work as a light housekeeper, an office helper, and a laundry worker. Id. at 73-75. With Plaintiff's age, education, and work history as well as her limitations to 45 minutes to one hour to stand and 30-45 minutes to sit, Plaintiff could not work a full eight-hour day. Id. at 78-79. Latto stated that Plaintiff could walk half a mile with rest for 30 minutes, could frequently lift five pounds, and needed to lie down for three-fourths of the day could not perform any full-time work. Id. at 78-79. Finally, Latto stated that if an individual experienced a frequent interference in attention and concentration, she would be unemployable. Id. at 80.

### B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based upon the entire record in the administrative hearing process. Jones v. Sec'y, Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). Judicial review is limited to a determination of whether substantial evidence exists in the record to support the Commissioner's decision, and whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health and Human Servs., 803 F.2d 211, 213

8

(6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the ALJ's decision must stand, if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Credibility determinations rest with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713-14 (6th Cir. 2012); see also 20 C.F.R. § 416.929. In the Sixth Circuit, "[w]e have held that an administrative law judge's credibility findings are virtually 'unchallengeable.'" Ritchie v. Comm'r of Soc. Sec., 540 F.App'x 508, 511 (6th Cir. 2013) (quoting Payne v. Comm'r of Soc. Sec., 402 F.App'x 109, 112–13 (6th Cir.2010)).

As to Plaintiff's contention that the ALJ erred in evaluating the opinion of Dr. Leone, Plaintiff's pain treatment physician, the ALJ afforded "little" weight to Dr. Leone's opinion as retrospective and inconsistent with his treatment history during the relevant period. (Docket Entry No. 12, Administrative Record, at 26).

Social Security regulations classify acceptable medical sources into three types: non-examining sources; examining but non-treating sources; and, treating sources. See 20 C.F.R. § 404.1527 (evaluating medical opinions); 20 C.F.R. § 404.1502, (terms defined); SSR 96-2p. A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the claimant, but provides a medical or other opinion in the claimant's case. Id. A

9

non-treating source has examined the claimant but does not have, or did not have an ongoing treatment relationship with the claimant. Id. A treating source has examined the claimant and has or had an ongoing treatment relationship that was consistent with accepted medical practice. Id.

More weight is afforded to a doctor who examined the claimant and the opinions from treating medical sources who have an established treating relationship with the claimant. See 20 C.F.R. § 404.1527(c)(1-2). Non-examining physicians' opinions are also considered, see id. at (e), and the opinions of State agency medical consultants must be considered. See SSR 96-6p. An ALJ should always give "good reasons" for the weight given to a treating source's medical opinion. SSR 96-2p.

Under the Act's regulations, a treating physician's opinion is due "controlling weight" if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." See 20 C.F.R. § 404.1527(c)(2) (evaluating medical opinions). If the opinion cannot be given controlling weight, the ALJ is required to provide "good reasons" for discounting the weight given to a treating source opinion. Id.; SSR 96-2p. The reasons provided must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)).

As in Gayheart, 710 F.3d 365 (6th Cir. 2013), the Circuit summarized the guiding principles

underlying what is commonly referred to as the "treating physician rule":

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), id. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), id. § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, id., as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, id. § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. Id. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

Id. at 375-76.

As a threshold issue, the Commissioner observes that Plaintiff only met the insured status requirements of the Act through December 31, 2012. (Docket Entry No. 12, Administrative Record, at 20. Thus, the Commissioner contends that Plaintiff's insured status expired almost two years prior to the ALJ's decision and Dr. Leone's August 2014 opinion on Plaintiff's inability to work. For

insured status, an individual must have 20 quarters of coverage in the 40-quarter period ending with the first quarter of disability. See 42 U.S.C. §§ 416(i)(3)(B), 423 (c)(1)(B); 20 C.F.R. § 404.130. Plaintiff's insured status expired on December 31, 2010. For Title II benefits, Plaintiff had to prove that she was disabled prior to the expiration of her insured status. See Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990); see also 20 C.F.R. § 404.101(a). When a claimant loses insured status, he or she is simply no longer eligible for benefits for a disability arising thereafter. Moon, 823 F.2d at 1182.

In a word, Dr. Leone's opinions are retroactive. Yet, the ALJ could not reject the opinions from the treating and examining sources largely because they are retrospective in nature. See Strong v. Soc. Sec. Admin., 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."); Toscano v. Comm'r of Soc. Sec., No. 08-15140, 2009 WL 5217657, at *4 (E.D. Mich. Dec. 30, 2009); see also Rivera v. Sullivan, 923 F.2d 964, 968 n.3 (2d Cir. 1991) ("[A] treating physician's opinion concerning disability during the course of treatment binds the fact-finder if not contradicted by substantial evidence, and is entitled to extra weight even if it is contradicted by substantial evidence."); Wilkins v. Sec., Dept. of HHS, 953 F.2d 93, 95 (4th Cir. 1991) ("[A] treating physician may properly offer a retrospective opinion on the past extent of an impairment."); Likes v. Callahan, 112 F.3d 189, 190-91 (5th Cir. 1997) ("Retrospective medical diagnoses constitute relevant evidence of pre-expiration disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates."); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998) ("A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period."); Flaten v. Sec'y of Health and Human Servs., 44 F.3d 1453, 1461 (9th Cir.

1995) (describing how a claimant may establish disability by means of a retrospective diagnosis). A retroactive analysis of disability is not only appropriate, but the Commissioner routinely mandates that such an analysis when there are no contemporaneous opinions. See SSR 83-20, 1983 WL 31249.

Here, Dr. Leone, Plaintiff's treating pain specialist, has treated Plaintiff since February 2008, almost five years prior to the date Plaintiff was last insured. Dr. Leone has had a long familiarity with Plaintiff's conditions during the relevant period at issue. Dr. Leone stated that the limitations found for Plaintiff have been present since September 3, 2007. (Docket Entry No. 12, Administrative Record, at 1114). Dr. Leone stated that his opinions are based on evidence of brachial neuritis, lumbosacral neuritis and spondylosis, cervical spinal stenosis and spondylosis, shoulder joint pain, thoracic spine pain, myalgia and myositis, facet syndrome, and chronic pain in her neck, left shoulder, and lumbar spine. Id. at 1110-11. Dr. Woods also opined that Plaintiff's conditions were present since 2007 based on the findings of his examination and review of Plaintiff's treatment records from the relevant period. Id. at 700, 703, and 709. For his opinions, Dr. Woods cited Plaintiff's antalgic gait, bilateral pes planus, weak right grip strength, decreased flexion in the right thumb, moderate right knee crepitus, moderately decreased lumbar spine flexion and extension, moderately decreased cervical spine range of motion in all directions, low back pain with dorsiflexion of the right lower extremity, and MRIs. Id. at 702-04.

These opinions are consistent with the MRIs performed prior to the date Plaintiff was last insured. These MRIs documented posterior disc protrusions at C2-C3, C3-C4, C4-C5, and C5-C6 causing mild compression of the spinal cord at C4-C5 and C5-C6; a diffuse disc bulge at C6-C7 as well as bilateral uncovertebral osteophytes causing mild central stenosis and bilateral foraminal narrowing, id. at 578, and a left paracentral disc protrusion at T7-T8. Id. at 699.

Assuming the opinions of the treating pain management specialist were not entitled to controlling weight, SSR 96-2p states that "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Here, Dr. Leone treated Plaintiff regularly during the period at issue and his treatment focused on Plaintiff's disabling spinal conditions. Dr. Leone provided objective medical test results for his opinions. Dr. Leone's opinions on Plaintiff's condition and disability are corroborated by Dr. Woods, who examined Plaintiff.

Thus, the Court concludes that Dr. Leone's opinions should have been given controlling weight. See 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."); SSR 96-2p, 1996 WL 374188.

The ALJ relied upon opinions from non-examining State agency doctors James Moore and Marvin Cohn, State agency consultants, as consistent with the record as a whole including Plaintiff's treatment history during the relevant period. (Docket Entry No. 12, Administrative Record, at 26, 398, 672). Under these consultants' opinions, Plaintiff could perform a range of "light" exertional type work. Id. at 399. Yet, Dr. Moore, a pediatrician, reviewed Plaintiff's records as of July 2010. Id. at 398-406. Dr. Cohn, an internist, reviewed Plaintiff's records on December 19, 2010, but failed to cite any new evidence. Id. at 672. In contrast, Dr. Leone is a board certified pain specialist.

The ALJ may consider consultant physicians' opinions on a disability determination. See 20 C.F.R. § 404.1527; SSR 96-6p; Kepke v. Comm'r of Soc. Sec., 636 F.App'x 625, (6th Cir. Jan. 12,

2016) ("Kepke misconstrues the Court's holding in Blakley v. Commissioner of Social Security as providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record. 581 F.3d 399, 409 (6th Cir. 2009).").

As applied here, the ALJ did not have good reasons to reject the opinions of Plaintiff's treating physicians who are specialists and whose opinions are supported by MRI test results. The opinions from non-treating, non-examining consultants who are not relevant specialists and who conduct a limited medical record review cannot carry greater weight than examining sources with a documented history of treatment. MRIs must be evaluated in connection with other results from the specialist's examination. See Blakley, 581 F.3d at 409 (6th Cir. 2009) (holding that the non-examining sources were not substantial evidence in light of fact that they reviewed a significantly incomplete record); Meece v. Barnhart, 192 F.App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence."); SSR 96-6p, 1996 WL 374180 (opinions from a non-examining source may outweigh a treating specialist if they review a "complete case record that includes a medical report from a specialist"). An ALJ "may not 'impose[ ] [her respective] notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered . . . ." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 134-35 (2d Cir. 2000)). Thus, the Court concludes that the ALJ erred in evaluating the opinions of Plaintiff's treating physicians who are specialists and in accepting the opinion of consultants who are not specialists and conducted a limited medical records review.

To evaluate Plaintiff's credibility, the ALJ had to determine if Plaintiff's medically

determinable impairments could reasonably be expected to produce the alleged symptoms. The ALJ then had to complete a seven-factor analysis to determine the credibility of the individual complaints. 20 C.F.R. § 404.1529(b)-(c); see Roger, 486 F.3d at 247. The factors on the second step are: the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and, any other measures used to relieve pain or other symptoms. SSR 96-7p, 1996 WL 374186.[1] Although an ALJ's findings on the credibility of the applicant are to be accorded great weight, such a determination must be supported by substantial evidence. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997). An ALJ's credibility finding must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to have caused the alleged symptoms" but found her medical treatment to be conservative and her statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely credible." (Docket Entry No. 12, Administrative Record, at 24).

As to the ALJ's rejection of Plaintiff's credibility on her pain, Plaintiff's physicians' examinations prior to the date she was last insured also confirmed evidence of tenderness and

---

[1]Social Security Ruling 96-7p was rescinded on March 16, 2016. See SSR 16-3p, 2016 WL 1119029. However, SSR 96-7p was binding at the time of the decision in this case.

increased tone in the cervical paraspinal muscles, id. at 586, and tenderness in the cervical and lumbar paraspinal muscles. Id. at 518-20, 694-95. Plaintiff's treatment history includes multiple surgeries and pain medications, physical therapy, and spinal injections are not "conservative" treatments. See Brewer v. Astrue, No. 5:09-CV-3023, 2011 WL 1304889, at *6 (S.D. Ohio Apr. 1, 2011) ("[The Commissioner's] characterization of Plaintiff's treatment as conservative is somewhat misleading. After [Plaintiff's] surgery, she continued to take strong narcotic pain medication, participated in physical therapy, entered a pain management program, and received a series of pain injections to control her symptoms.").

As to the ALJ's description of Plaintiff's pain, the ALJ could not substitute her lay judgment for the objective medical findings of Plaintiff's treating and examining experts. Under 20 C.F.R. § 404.1529(c)(2), a claimant's allegations cannot be rejected simply "because the available objective medical evidence does not substantiate your statements." SSR 96-7p states a credibility "determination or decision cannot be made solely on the basis of objective medical evidence" because "[s]ymptoms cannot be measured objectively through clinical or laboratory diagnostic techniques . . . ."

In sum, the Court concludes that the substantial evidence demonstrates that the ALJ erred in evaluating the opinions of Plaintiff's treating physicians given Plaintiff's extensive medical testing and history. Thus, the Court also concludes that the ALJ erred in evaluating Plaintiff's testimony about her pain and its effects on her ability to work. Thus, the Court concludes that the Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 11th day of January, 2017.

_____
WILLIAM J. HAYNES, JR.
Senior United States District Judge